IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER HUNTER, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | Civil Action No. ADC-21-402 |
| | * | |
| SEAN SNEE, JR., | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

Defendant, Sean Snee, Jr. ("Defendant"), moves this Court for summary judgment (the "Motion") (ECF No. 24) on the Complaint (ECF No. 4) brought by Plaintiffs Christopher Hunter and S.H., a minor (collectively, "Plaintiffs"). Plaintiffs responded in opposition (ECF No. 34). After considering the Motion and response thereto, the Court finds that no hearing is necessary.[1] Loc.R. 105.6 (D.Md. 2021). In addition, having reviewed the pleadings of record and all competent and admissible evidence submitted, Defendant's Motion is GRANTED with respect to Counts I, IV, V, and VIII and DENIED with respect to Counts II, III, VI, and VII.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a police officer with the Baltimore County Police Department. ECF No. 4 ¶¶ 2–3. On May 20, 2019,[2] Defendant was in pursuit of a gold Ford Explorer (license plate 2CV3508) with suspended registration. ECF No. 24-4; ECF No. 24-2 at 2. The Ford Explorer drove off when

---

[1] This case was referred to United States Magistrate Judge A. David Copperthite for all proceedings on September 13, 2021, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 (D.Md. 2021). ECF No. 17.

[2] Plaintiffs' Complaint identified the date of the incident as on or about June 3, 2019. ECF No. 4 ¶ 6. However, Plaintiff later contends that the correct date of the incident was May 20, 2019, as identified by Defendant and the body camera footage. ECF No. 34-4 at 1.

the driver identified that Defendant approached. ECF No. 24-4. Defendant pursued the Ford Explorer but eventually lost sight of it. *Id.* While in pursuit in the same area, Defendant encountered Plaintiffs in a silver Mercury Mountaineer with a different license plate than the Ford Explorer, and mistakenly thought it was the Ford Explorer. *Id.* ECF No. 24-2 at 2. Defendant contends that Plaintiffs' car was being operated "like the suspect's vehicle, without the headlights activated," but Plaintiffs contend that the headlights were always on as they were set in the automatic position. ECF No. 24-2 at 2; ECF No. 34 at 6.

Defendant approached Plaintiffs' car from a head on position, parked directly in front of Plaintiffs' car, and exited his car with his gun pointed toward Mr. Hunter. ECF No. 24-4. Mr. Hunter and S.H. were in the car. ECF No. 4 ¶ 6. Defendant instructed Plaintiffs to get out of the car, and Mr. Hunter opened the door as Defendant approached. ECF No. 24-4. Defendant repeatedly told Mr. Hunter to get out of the car while he pulled Mr. Hunter's arm to remove him from the car. *Id.* Mr. Hunter was stuck in his seatbelt as Defendant pulled him out of the car. *Id.* ECF No. 4 ¶ 6. Defendant told Mr. Hunter to put his hands behind his back, while tugging his wrists together. ECF No. 24-4. Defendant then realized that he had misidentified Plaintiffs' car as the Ford Explorer. *Id.* As this was happening, S.H. also exited the car, was standing with his hands over his head, and crying, stating, "I'm scared." *Id.* Defendant explained the error to Plaintiffs and told them they were free to go; he provided his name and contact information if they needed further assistance. *Id.* Plaintiffs allege that they "[s]uffered serious, painful and possibly permanent bodily injuries, great physical pain and mental anguish, severe and substantial emotional distress and loss of the capacity for the enjoyment of life" as a result of the incident. ECF No. 4 ¶¶ 13, 18, 23, 28, 33, 38, 43, 48.

Plaintiffs brought the present action in the Circuit Court for Baltimore County, and Defendant removed the action to this Court on February 17, 2021. ECF No. 1-1. Plaintiffs' Complaint raises the following counts on behalf of Mr. Hunter: violation of 42 U.S.C. § 1983 (Count I); battery (Count II); false imprisonment (Count III); intentional infliction of emotional distress (Count IV); and the following counts on behalf of S.H.: violation of 42 U.S.C. § 1983 (Count V); assault and/or battery (Count VI); false imprisonment (Count VII); and intentional infliction of emotional distress (Count VIII). ECF No. 4. On October 26, 2021, Defendant moved for summary judgment on Plaintiffs' claims. ECF No. 24. Plaintiffs responded in opposition on November 24, 2021. ECF No. 34.

## DISCUSSION

### A. Standard of Review

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. See Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party, and "the evidence is merely colorable,

3

or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

### B. Defendant's Motion for Summary Judgment

Defendant argues that there are no genuine issues of material fact, and he is entitled to judgment on all of Plaintiffs' claims. ECF No. 24 at 1. Specifically, Defendant contends that Plaintiffs' 1983 claim based on the Fourteenth Amendment must fail because the Fourth Amendment provides the proper constitutional analysis and because Plaintiffs' allegations do not shock the conscience of the Court as required by the Fourteenth Amendment analysis. *Id.* at 6–11. Defendant further contends that Plaintiffs' 1983 claims fail because the Defendant had at least reasonable suspicion to stop Plaintiffs, and he is entitled to qualified immunity to bar any 1983 claims against him. *Id.* at 11–16. Defendant next asserts that he is entitled to judgment on Plaintiffs' claims for battery, false imprisonment, and assault and/or battery because he had legal justification for his stop. *Id.* at 16–17. And finally, Defendant states that he is entitled to judgment on Plaintiffs' intentional infliction of emotional distress claims because there is no genuine issue of material fact that Defendant did not act intentionally or recklessly to cause Plaintiffs emotional

damage, nor was his conduct extreme and outrageous. *Id.* at 17–18. I address each argument in turn.[3]

### 1. Count I and V: 42 U.S.C. § 1983

The Court agrees with Defendant's argument that Plaintiffs' 1983 claims are properly analyzed according to the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. A claim that "law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person" is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). *See Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) ("[W]e are mindful of the Supreme Court's injunction that the Due Process Clause is not the proper lens through which to evaluate law enforcement's pretrial missteps."). Plaintiffs' opposition offers no response to Defendant's argument, and frames their argument as one of challenging the "legal justification" for Defendant's stop and his "unreasonable use of force" in the stop.[4] *See* ECF No. 34 at 3. Both contentions are properly analyzed under the Fourth Amendment, made applicable to the states through the Fourteenth Amendment, *see Mapp v. Ohio*, 367 U.S. 643, 655 (1961), and do not invoke the substantive due process framework. *See Graham*, 490 U.S. at 388. *Cf. Young v. City of Mount Ranier*, 238 F.3d 567, 574 (4th Cir. 2001)

---

[3] Defendant also contends that he is entitled to public official immunity under Maryland law for any allegations of negligent conduct. ECF No. 24-2 at 19. In response, Plaintiffs clarify that they are not alleging simple negligence. ECF No. 34 at 19. Accordingly, Defendant's argument for public official immunity is moot. *See also Ashton v. Brown*, 339 Md. 70, 117 (1995) ("Public official immunity is not a defense to these intentional torts.").

[4] Plaintiffs do state that Defendant's actions "shock the conscious" of the Court. *See* ECF No. 34 at 13–14, 16. However, the nature of Plaintiffs' claims invokes the Court's Fourth Amendment analysis, not the substantive due process analysis. *See Graham*, 490 U.S. at 388.

5

(concerning a 1983 claim brought under the Fourth and Fourteenth Amendment but that was ultimately analyzed under the Fourteenth Amendment because there was no "contention that the law enforcement officers improperly took [the plaintiff] into custody or that they used excessive force when taking him into custody"). Accordingly, Defendant's argument that his conduct was not the type of conduct to "shock the conscious" of this Court with respect to claims for violations of substantive due process is moot.

Reasonable Suspicion

Defendant next asserts that he had at least reasonable suspicion to justify his stop. ECF No. 24-2 at 11. "The principal components of a determination of reasonable suspicion . . . will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." *Ornelas v. United States*, 517 U.S. 690, 696–97 (1996). *See United States v. Mitchell*, 963 F.3d 385, 390 (4th Cir. 2020) (explaining the same). Stopping a car and detaining its occupant constitutes a seizure under the Fourth Amendment, even if the detention was brief. *See Ogunsula v. Maryland State Police et al.*, No. CV ELH-20-2568, 2021 WL 6105503, at *25 (D.Md. Dec. 23, 2021) (citing *Kansas v. Glover*, 140 S.Ct. 1183, 1187 (2020)). *See United States v. Palmer*, 820 F.3d 640, 648 (4th Cir. 2016). "Under well-established doctrine, a police officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop—known as a '*Terry* stop'—predicated on reasonable, articulable suspicion that 'criminal activity may be afoot.'" *Mitchell*, 963 F.3d at 390 (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The reasonableness of a seizure is an objective test wherein the Court assesses the "totality of the circumstances" to determine "whether the officer had 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Walker v. Donahoe*, 3 F.4th 676,

6

682 (4th Cir. 2021) (quoting *United States v. Griffin*, 589 F.3d 148, 152 (4th Cir. 2009)). *See Los Angeles County v. Rettele,* 550 U.S. 609, 614 (2007) (citations omitted) ("The test of reasonableness under the Fourth Amendment is an objective one."); *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004) ("[W]e examine the facts within the knowledge of [the officer] to determine the presence or nonexistence of reasonable suspicion.").

"Reasonable suspicion requires 'specific and articulable facts that demonstrate at least a minimal level of objective justification for the belief' that a violation of the law has occurred." *Glass v. Anne Arundel Cty.*, 38 F.Supp.3d 705, 717 (D.Md. 2014), *aff'd,* 716 F.App'x 179 (4th Cir. 2018). The assessment weighs "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Glover*, 140 S.Ct. at 1188 (citations omitted). Notably, "[c]ourts have typically found reasonable suspicion to stop . . . an individual who closely resembles a description or composite sketch when that resemblance is combined with *both* geographic and temporal proximity." *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 559–60 (4th Cir. 2017), *as amended* (Aug. 22, 2017) (emphasis in original) (citing *Chambers v. Maroney*, 399 U.S. 42, 44 (1970)). An officer is "not required to be correct," but instead must only have had "an objectively reasonable, articulable suspicion that plaintiff was violating" the law. *McDaniel*, 898 F.Supp.2d at 835–36 (citing *United States v. Mubdi,* 691 F.3d 334, 342 (4th Cir. 2012)).

Taking the facts in the light most favorable to Plaintiffs, I cannot conclude, based on the totality of the circumstances, that Defendant's actions were reasonable as a matter of law and that no genuine dispute of material fact exists. While Plaintiffs were in the same geographic location at the same time of Defendant's search for a suspect with a similar car, Defendant approached Plaintiffs' car head on, the license plate that did not match the Ford Explorer was in his sight, as

7

was the appearance of the car. *See* ECF No. 24-4. There remains a question of whether the license plate and car color were visible to Defendant and, if so, whether Defendant's failure to confirm the license plate matched that of the Ford Explorer was reasonable. Moreover, there is a dispute about whether Plaintiffs' headlights were on—which Defendant contends mirrored the Ford Explorer being pursued. *See* ECF No. 24-2 at 2. The body cam footage does not definitively show whether the headlights were off, a factor Defendant contends supports his belief that Plaintiffs' car was the Ford Explorer. With material facts in dispute, the Court cannot conclude as a matter of law that Defendant had reasonable suspicion when he stopped Plaintiffs' car.

Qualified Immunity

Defendant finally contends that he is entitled to judgment as a matter of law on Plaintiffs' 1983 claim because the doctrine of qualified immunity shields him from Plaintiffs' claims for damages. ECF No. 24-2 at 14. Specifically, he asserts that he did not violate Plaintiffs' clearly established constitutional rights when he stopped them. *Id.* "The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate clearly established constitutional . . . rights that a reasonable officer would have known." *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018). Qualified immunity balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The doctrine protects government officials who make "reasonable but mistaken judgments about open legal questions." *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). *See Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011). Qualified immunity shields an officer from claims for damages

unless Plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because the test is two-fold, if the Court determines the right is not clearly established, then the doctrine of qualified immunity will shield Defendant from liability.

"An officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity." *Ogunsula*, 2021 WL 6105503, at *21. The doctrine applies to those officials who "commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation omitted). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

As explained *supra*, the Court cannot conclude as a matter of law that Defendant had reasonable suspicion for stopping Plaintiffs and thus whether his stop violated their constitutional rights. However, the question of whether a right is clearly established is a question of law and thus "is always capable of decision at the summary judgment phase." *Ray v. Roane*, 948 F.3d 222, 228 (4th Cir. 2020). *See Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (explaining the same). "The question of whether a right is clearly established is a question of law for the Court to decide." *Hupp v. Cook*, 931 F.3d 307, 317–18 (4th Cir. 2019) (citing *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992)). A right is clearly established where it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mays v. Sprinkle*, 992 F.3d 295, 301 (4th Cir. 2021) (quoting *Reichle v. Howards*, 566 U.S. 658, 664

9

(2012)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. The Fourth Circuit has explained:

> A right need not be recognized by a court in a specific factual context before such right may be considered "clearly established" for purposes of qualified immunity. However, the Supreme Court has emphasized in recent years that courts are "not to define clearly established law at a high level of generality," and that "[s]pecificity is especially important in the Fourth Amendment context." Thus, although we often have looked to the general rules articulated in *Graham* and *Garner* to hold that a right is clearly established, the Supreme Court has cautioned that we should do so only in "obvious case[s]" exhibiting violations of the core of the Fourth Amendment.

*Wilson v. Prince George's Cty., Maryland*, 893 F.3d 213, 221–22 (4th Cir. 2018) (internal citations omitted). Courts "consider whether a right is clearly established 'in light of the specific context of the case, not as a broad general proposition.'" *Adams v. Ferguson*, 884 F.3d 219, 227 (4th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

Accordingly, the question before this Court is whether a reasonable officer would have known that he was violating Plaintiffs' clearly established rights when, while in pursuit of a car with suspended registration that fled from police, he pointed a gun at the suspect in the car, directed the suspect out of the car, pulled the suspect from the car, and pulled the suspect's hands behind his back. Defendant contends that "no body of law . . . would have informed [him] that his actions would be a violation of Plaintiffs' Constitutional protections." ECF No. 24-2 at 16. The Court agrees. While, as explained *supra*, there may be a question of whether Defendant violated Plaintiffs' constitutional rights because he lacked "legal justification" for the stop, *see* ECF No. 34 at 3, there are no material facts in dispute with respect to Defendant's use of force, which Plaintiffs contend was unreasonable.

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen, should be analyzed under the

10

Fourth Amendment and its 'reasonableness' standard." *Graham*, 490 U.S. at 395. "[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 396–97. Courts then must evaluate reasonableness by asking "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Hupp*, 931 F.3d at 321–22 (quoting *Elliot v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996)). To assess reasonableness, the Court considers several factors the United States Supreme Court identified in *Graham*, including: "'the severity of the crime at issue,' whether the 'suspect pose[d] an immediate threat to the safety of the officers or others,' and whether the suspect was 'actively resisting arrest or attempting to evade arrest by flight.'" *Id.* at 322 (quoting *Graham*, 490 U.S. at 396). The ultimate question is "whether the totality of the circumstances justifie[d] a particular sort of . . . seizure." *Id.* (quoting *Smith*, 781 F.3d at 101). An assessment of the totality of the circumstances surrounding the use of force does not turn entirely on whether the Defendant's arrest was lawful. *See id.* at 322.

Initially, the case law supports that Defendant's actions in effectuating the stop were reasonable. *See United States v. Taylor*, 857 F.2d 210, 214 (4th Cir. 1988) ("Once a lawful *Terry* stop of an automobile is made, ordering suspects from the vehicle is a valid precautionary measure designed to afford a degree of protection to the investigating officer."); *Schultz v. Braga*, 290 F.Supp.2d 637, 649 n.6 (D.Md. 2003), *aff'd*, 455 F.3d 470 (4th Cir. 2006) (explaining that, "[w]hile approaching a suspect with drawn weapons may be an extraordinary measure, the Fourth Circuit has justified it as a reasonable means of counteracting potential danger to police officers confronted with a suspect believed to be dangerous"); *Souder v. Toncession*, No. CIV. A. AW-07-1996, 2009 WL 4348831, at *6 (D.Md. Nov. 30, 2009) (explaining that grabbing

a suspect's arm and pulling him out of the door of a house was reasonable under the Fourth Amendment).

The Court also reviews the *Graham* factors as assessed by a reasonable officer in the same circumstances as Defendant. With respect to the first factor—the severity of the crime, Defendant pursued Plaintiffs for suspended registration and fleeing a traffic stop. While suspended registration may not be a severe offense, fleeing from law enforcement would raise a reasonable officer's concern that a greater amount of force may be needed to effectuate the stop. With respect to the second factor—whether the suspect posed an immediate threat to safety of others, it is unclear whether a reasonable officer would believe the suspect posed a threat. Suspended registration tags certainly would not raise a significant concern on its own, but a suspect fleeing police may pose a greater threat. Finally, with respect to the third factor—whether the suspect was attempting to evade by flight, a reasonable officer may believe that a greater degree of force is warranted when the suspect he believed he approached had attempted to evade the traffic stop by flight. The factors are either ambivalent or weigh in favor that a reasonable officer at the scene could have thought that the amount of force Defendant exhibited was warranted under the circumstances. Given the case law indicating that drawing a gun and pulling someone out a door likely is not excessive force and the *Graham* factors, the Court cannot conclude that a reasonable officer would consider Defendant's use of force to be unreasonable under the circumstances, even if the arrest was not lawful. *See Hupp*, 931 F.3d at 322.

Moreover, the fact that Defendant was mistaken does not compel a different result. *See Lane*, 573 U.S. at 243. Case law from this Circuit has established that detention due to mistaken identity may not sustain a defense against qualified immunity. *See Thompson v. Prince William County*, 753 F.2d 363, 364 (4th Cir. 1985). The Fourth Circuit has explained that "officers who

mistakenly arrest the wrong person are immune from § 1983 liability unless they act in an objectively unreasonable manner in the circumstances," even where the officer "failed to take additional steps to verify" the plaintiff was the suspect. *Brown v. Wiita*, 7 F.App'x 275, 279 (4th Cir. 2001).

As explained, the doctrine of qualified immunity bars a claim for damages against a public official unless Plaintiffs show that Defendant violated their "clearly established" constitutional rights. *al-Kidd*, 563 U.S. at 735. Even assuming that Plaintiffs may succeed at trial at showing that Defendant's stop was unlawful, it is not "sufficiently clear that every reasonable official would have understood that" Defendant's actions violated Plaintiffs' rights, especially in light of the case law and *Graham* factors. *See Mays*, 992 F.3d at 301. Whether the right was clearly established is a question of law for the Court. Accordingly, there is no genuine dispute of material fact that Defendant is entitled to qualified immunity, and thus he is entitled to judgment as a matter of law that he is not liable for Plaintiffs' 1983 claims.

### 4. Counts II, III, VI, VII: Battery, False Imprisonment, and Assault and/or Battery

Defendant asserts further that Plaintiffs' battery, false imprisonment, and assault and/or battery claims related to his alleged excessive use of force are without merit because his actions were legally justified.[5] ECF No. 24-2 at 16–17. "False imprisonment, false arrest, and assault and battery can only occur when there is no legal authority or justification for the arresting officer's actions.'" *Hines v. French*, 157 Md.App. 536, 551 (2004) (citations omitted). Legal justification is the equivalent of legal authority. *Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643, 655 (1970). For instance, "[a]n officer is not liable for battery for using a reasonable amount of force when

---

[5] A federal court exercising diversity jurisdiction must apply the substantive law of the state in which the court is located. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Therefore, the Court will apply Maryland law to analyze this Motion with respect to Plaintiffs' common law claims.

effectuating a lawful detention or arrest." *Stutzman v. Krenik*, 350 F.Supp.3d 366, 383 (D.Md. 2018). However, an officer "may be held liable for battery if the officer 'uses excessive force, or force greater than is reasonably necessary under the circumstances.'" *Dobbs v. Townsend*, 416 F.Supp.3d 441, 452 (D.Md. 2019) (quoting *French v. Hines*, 182 Md.App. 201, 266 (2008)). Such state law excessive force claims are analyzed under the objective reasonableness standard of the Fourth Amendment. *Wilson v. Detweiler*, No. CV BPG-20-869, 2021 WL 3188329, at *9 (D.Md. July 28, 2021) (citing *Hines*, 157 Md.App. at 574–75) (other citations omitted). If Defendant lacked legal justification to stop Plaintiffs, "then the physical force used in effectuating the arrests would give rise to a cause of action for assault and battery." *Ashton v. Brown,* 339 Md. 70, 119 n.24 (1995). "Conversely, if the arrests themselves were not tortious, neither was the physical force used to effectuate them." *Id. See Sydnor v. Finish Line, Inc.*, No. CIV. CCB-10-3650, 2011 WL 4592400, at *3 (D.Md. Sept. 29, 2011).

As explained *supra*, Defendant did not act with excessive force according to the reasonableness analysis of the Fourth Amendment that guides Plaintiffs' common law claims. Therefore, Plaintiffs' contention that their state law claims may be based on excessive force would fail. However, there remains a dispute of material fact as to whether Defendant had legal justification to stop and detain Plaintiffs. Because there is a genuine issue of material fact, the Court cannot then conclude as a matter of law that Defendant had legal authority for his actions that Plaintiffs claim constituted battery, assault, and false imprisonment.

### 5. Counts IV and VIII: Intentional Infliction of Emotional Distress ("IIED")

Defendant further contends that there is no evidence he acted intentionally or recklessly to cause Plaintiffs emotional damage, nor was his conduct extreme and outrageous. ECF No. 24-2 at

17–18. In a claim for IIED, Plaintiffs must show that: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) The emotional distress must be severe." *Harris v. Jones*, 281 Md. 560, 566 (1977). Generally, IIED claims succeed where there "is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. The requirements of the rule are rigorous, and difficult to satisfy." *Kentucky Fried Chicken Nat. Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992). *See McPherson v. Baltimore Police Dep't*, 494 F.Supp.3d 269, 286 (D.Md. 2020) (explaining the same). IIED claims are "rarely viable in a case brought under Maryland law." *Takacs v. Fiore*, 473 F.Supp.2d 647, 652 (D.Md. 2007) (quoting *Robinson v. Cutchin*, 140 F.Supp.2d 488, 494 (D.Md. 2001)). *See Lasater v. Guttmann*, 194 Md.App. 431, 449-450 (2010) (detailing the "only four times" the Maryland Court of Appeals has recognized the tort of IIED).

This Court's decision in *Takacs* is of particular relevance here. In *Takacs*, the Court assumed, without deciding, that the plaintiff would satisfy the first three elements and instead focused on the fourth element of severe emotional distress. 473 F.Supp.2d at 652. It explained that "[s]evere distress is that which 'no reasonable man could be expected to endure'" and that disrupts the plaintiff's "ability to function on a daily basis." *Id.* (first quoting *Harris v. Jones*, 281 Md. 560, 571 (1977)) (then quoting *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F.Supp. 720, 750 (D.Md. 1996)). Despite alleging, *inter alia*, severe depression and anxiety, the plaintiff did not "allege that she ha[d] been unable to function on a daily basis, even if her functioning [was] presumably affected by her psychological and physical distress." *Id.* The plaintiff's claim that she

15

has "suffered a severely disabling emotional response [was] a legal conclusion." *Id.* (citation omitted).

Here, like in *Takacs*, even assuming but not deciding that the first three elements are satisfied, Plaintiffs have not alleged the type of severe distress that would amount to an inability to function on a daily basis and thus have failed to show Defendant's liability for IIED. Plaintiffs' response indicates that Mr. Hunter sought psychiatric treatment in July of 2019 related to stress resulting from the incident and sought additional treatment for PTSD, anxiety, and depression. ECF No. 34 at 10–11. Plaintiffs' motion does not detail impacts on S.H.'s functioning at all. The Complaint does not allege further details, instead the allegations under Counts IV and VIII contain the identical phrases that they "[s]uffered serious, painful and possibly permanent bodily injuries, great physical pain and mental anguish, severe and substantial emotional distress and loss of the capacity for the enjoyment of life." ECF No. 4 ¶¶ 28, 48. Plaintiffs' statements of "severe and substantial emotional distress" are simply "a legal conclusion" and thus will not sustain the IIED claims. *Takacs*, 473 F.Supp.2d at 652. Accordingly, there is no genuine issue of material fact that Plaintiffs have failed to put forth facts to support a claim for Defendant's liability for IIED, and Defendant is thus entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendant's Motion (ECF No. 24) is GRANTED to the extent it seeks judgment on Counts I, IV, V, and VIII, and DENIED to the extent it seeks judgment on Counts II, III, VI, and VII. A separate Order will follow.

Date: 24 January 2022

A. David Copperthite
United States Magistrate Judge